## MATTHEWS, Appellant, v. FRENCH.

### Division Two, March 6, 1906.

1. **QUIETING TITLE: Division Line: Question of Fact.** The appellate court will not undertake to settle a conflict in the testimony upon the question of fact, supported by substantial evidence, as to whether the parties claiming an accretion had agreed upon a division line.

2. **DIVISION LINE: Agreement: Husband Acting for Wife: Ratification.** Although the husband was not expressly authorized to act for his wife in agreeing upon a division line of lands accreted to those of the adjoining riparian owners, yet if the agreement was made and she subsequently ratified it, the agreement was mutual and was binding on her and her grantees. And her ratification may be shown by the fact that after the division line was agreed upon, she and her husband took possession in accordance therewith and continued to so occupy the land.

3. ———: ———: **Intervening Claimants.** An agreement by riparian owners upon a division line to accretions is not invalidated, in a suit between them or their grantees, by the fact that a third party owned an intervening tract on the original shore, if such third party is not a party to the suit. The title and right to possession of such third party cannot be litigated in a suit between the parties to the agreement or their privies alone, and should not be considered.

Appeal from Mississippi Circuit Court.—*Hon. H. C. Riley,* Judge.

AFFIRMED.

*Russell & Deal* for appellant.

(1) It is admitted that the land in dispute belongs to the plaintiff unless his grantor, Stephen Bird, gave it away by agreeing to an incorrect division line across the said accretions. (2) We deny that there was in fact ever an agreed line between Bird and Keyser, and both William Keyser and Stephen Bird who it is claimed agreed to this line swear that there was no such an agreement. However, the trial court found against us upon this question of fact. (3) But even if there had been such an agreement, it was not binding between the parties because Althea Keyser, a married woman, was the owner of the land, and her husband had no right to bind her without proper authority from her. Bigelow on Estoppel (3 Ed.), p. 518; Schenck v. Stumpf, 6 Mo. App. 381. No effort was made to show that William Keyser had any authority to act for his wife in making such an agreement. It requires strong proof to show a husband's agency over his wife's property and the unauthorized acts of the husband will not estop her. Eystra v. Cappelle, 61 Mo. 578; McClean v. Abshire, 72 Mo. App. 309. (4) An agreed boundary line is only possible where lands adjoin and lay alongside of each other, and then the consideration is what one yields to the other, and is a species of estoppel *in pais.* Brummell v. Harris, 148 Mo. 422. (5) Such a contract, to be binding between the parties, must be mutual, and if this pretended agreement was not binding as to Mrs. Althea Keyser, it was not binding as to Bird, or the plaintiff, who is his grantee. Hemstead v. Easton, 33 Mo. 142; Schenck v. Stumpf, 6 Mo. App. 381. (6) From the nature of the case it was utterly

impossible for the parties to agree upon and fix a division line, because the undisputed evidence shows that their lands were not adjoining, but that one J. E. Merriman owned a strip of land 125 feet wide between the land of Mrs. Keyser and Stephen Bird. Brummell v. Harris, 148 Mo. 442.

*H. C. O'Bryan* for respondent.

FOX, J.—This cause is here upon appeal by plaintiff from a judgment in the Mississippi Circuit Court in favor of defendant. This proceeding is predicated upon the provisions of section 650, Revised Statutes 1899, to ascertain and define title to real estate. The petition thus states the cause of action:

"Plaintiff states that he is the owner in fee simple of the following described real estate in Mississippi county, Missouri, viz: A tract of land bounded as follows: Beginning at a point on the original bank of the Mississippi river one hundred and twenty-five feet south of the north line of section 22, township 27, range 17, running thence sixteen degrees and fifty-three minutes east 3000 feet to the Mississippi river; thence down the river to a point due east of the point of beginning; thence due west to the point of beginning.

"Plaintiff further states that the defendant claims to have title to or an interest in the said described land or real estate, which claim is adverse and hostile to plaintiff's right.

"Wherefore, the plaintiff prays the court to ascertain and determine the estate, title and interest to the said parties respectively in the real estate and to define and adjudge by its judgment and decree the title, estate and interest of the parties severally, in and to said lands, and plaintiff asks for all other proper relief and for costs."

To this petition defendant filed the following answer:

"The defendant for answer to the plaintiff's petition denies generally each and every allegation therein contained and prays for judgment.

"And for a further answer to said petition the defendant says that the real estate sued for herein is part of an accretion or made land, which accretion is five or six miles in length formed in front of sections 23, 22, 14, 15 and others. That said land against which and to which said accretion is formed and attached in 1889 belonged to Stephen Bird, Althea Keyser, wife of Capt. Wm. Keyser, Merriman, Sickman and others.

"That said accretion has never been divided and partioned by deed or decree between the several parties entitled to an interest therein. That the land of Stephen Bird, under whom Matthews, the plaintiff in this cause, claims title, lies immediately south and adjoining to the lands of Althea Keyser in section 14, now owned by the defendant.

"That on, to-wit, the 25th March, 1889, said division line being a subject of controversy and to settle same between Stephen Bird acting in his own behalf and Mrs. Althea Keyser represented by her husband and agent, William Keyser, did voluntarily agree upon and fix the division line on said accretion, whereby they and each, Bird and Keyser, then knew and was informed that the line agreed upon was not the true line or where the same would be if the said accretion was equitably divided between all the parties interested therein and they with such knowledge did cause the county surveyor, Jno. C. O'Bryan, to run and establish a point up the river 14.89 chains from the intersection of the ancient meander line and then commencing at the corner of fraction section 14 and 23, township 27, range 17, and run a line to the point established in the river, bearing of line being north 52 degrees and 30 seconds east, length of line 7. 68 chains, which the said Bird and Keyser then and there with the information that said line was not the true line yet nevertheless then and

there agreed upon and caused said surveyor to make a record thereof as an agreed division line, and that all accreted lands north of said line was to be Keyser's and that south Bird's.   And ever since then Keyser and French, his grantees have held and used said land, being the same in actual and continued and adverse possession, that the lands sued for in plaintiff's petition are lying north of said agreed line and under said agreement are the property of the said defendant and by reason of the said agreement plaintiff, a grantee under Bird, is estopped to now claim the land sued for or dispute the division line agreed upon.''

The replication of plaintiff was a general denial of the new matter alleged in the answer.

The cause was tried by the court without the aid of a jury.   Upon the trial the following agreement as to facts was submitted to the court as part of the evidence in this cause:

''Counsel agree that the plat marked 'Exhibit A' is a correct plat showing the land in controversy and it is admitted further that the land between lines marked B and C and the line marked 'F' and the river and the section line on the south is the land in dispute.   And it is admitted also that this land in controversy being an accretion of the Mississippi river is the property of the plaintiff unless there has been an agreed line between the parties on the line designated 'F' on the plat and it is admitted that if it is established by the proof that the line marked 'F' has been made the agreed line between the parties then the title to the property would rest in the defendant.   And it is agreed that the line 'B and C' on the south end extends one hundred and twenty-five feet south of the section line.''

The plat referred to in the agreement was as follows:

Matthews v. French.

PLAT.

Under the agreement submitted in evidence there was only one question in dispute between the parties to this suit, and that was as to whether there was an agreed line as designated on the plat with the letter "F" between parties then claiming to own the land as to the accretions which had formed in front of their respective claims. It is unnecessary to set out the testimony in detail upon this sharply contested question as to an agreed line between parties who were then claiming to be the owners of certain accretions which had formed in front of the lands claimed by the parties, who it is said agreed upon a division line. This court would

not undertake to settle the conflict in the testimony upon that subject; hence it is sufficient to enable us to determine the legal propositions involved in this case to say that there was testimony both for the plaintiff and defendant tending to prove the assertions made by each of them in respect to this agreed line.

Witnesses Bird and Keyser, who it is charged made the agreement as to the division line, both deny that any such line was agreed upon. On the other hand, John C. O'Bryan, who was the county surveyor for about ten years, testified most positively that Stephen Bird, who is plaintiff's grantor, and William Keyser, the husband of Mrs. Keyser, authorized him to run the line designated by "F" in the plat and that they agreed at the time that such line should be the division line between their lands, and to emphasize his testimony, that such line was agreed upon, they requested him to make a record of it, which he did and such record was introduced in evidence. In addition to this, witness Sickman testifies that O'Bryan surveyed the division line and that it was surveyed to divide the lands of Bird and Keyser. He says that Bird and Keyser had O'Bryan run that line and mark it off and they agreed that north of the line should be Keyser's and south of the line should be Bird's and that after the line was established they fenced it and Mrs. Keyser and French have occupied down to the line since that time. French, the defendant, testified that after he bought the land from Mrs. Keyser he did not know there was an agreed line on the premises between Keyser and Bird, but that Bird told him and pointed out the agreed line and he thinks Bird told him that the accretions south of the line were his and those north were Mrs. Keyser's. The land in dispute is north of the agreed line. Defendant states that he fenced and took possession of this land in 1894 and has been in possession ever since, and that Bird took possession of the land south of the agreed line and fenced it up to the agreed line and made

no claim to any part of the land in dispute until there was a new survey made of the accretions in 1896. In addition to this the testimony of Bird and other witnesses tends to show that J. E. Merriman was the owner of a few acres of land in section 22, and that if accretions formed to this land so as to make Merriman the owner of such accretions, then such accretions so formed to the Merriman land would make a small strip of land between the Bird and Keyser land, which would prevent them from being adjoining proprietors.

This is a sufficient indication of the testimony to show the basis upon which the trial court rests its judgment for defendant.

At the close of the evidence the plaintiff requested the court to declare the law as follows:

"1. The court declares the law to be that even if there was a division line agreed upon between Stephen Bird and William Keyser the husband of Althea Keyser, who was the owner of the land, such an agreed line would not be binding in this case, as the proof fails to show that the said William Keyser had any authority to bind his wife and was therefore not binding upon the said Bird, because the same was not mutual.

"2. The court declares the law to be that even if Stephen Bird and William Keyser undertook to establish a division line across the accretions in front of the lands of the said Bird and Althea Keyser, still such an agreement was of no effect unless the lands of the said parties were adjoining, and if the court believes from the evidence that one Merriman owned a strip of land between the land of the said Bird and Althea Keyser then no such agreement undertaking to establish such a division line could be valid or binding and in such case the finding should be for the plaintiff.

"3. The court declares the law to be that if at the time the accretions now in controversy began to form and did form against the river bank, one J. E. Merriman or those under whom he holds owned a lot that ex-

tended to the river bank, then the said Merriman is entitled to accretions forming in front of his lot in the same proportion to the amount of his river front as other landowners adjoining him.''

Upon the cause being submitted to the court a finding was made in favor of the defendant and decree and judgment entered in accordance with such finding. Plaintiff timely filed motion for new trial, which was by the court overruled and from the judgment rendered in the cause his appeal was in due time and form prosecuted to this court. The record is now before us for review.

OPINION.

It is manifest from this record that the main dispute between the parties to this action is as to the agreed or division line between them, as contended for by the respondent. Upon this question the trial court heard the testimony, had the witnesses before it, and we shall not undertake to retry, upon the disclosures of the record, that question which is purely one of fact.

This leads us to the consideration of the only legal proposition presented by this record, which is embraced in the contention of appellant that the court committed error in refusing the declarations of law requested by appellant.

Instruction 1, it will be observed, requested the court to substantially declare the law that the division line, even though agreed upon between Stephen Bird and William Keyser, would not be binding in this court on account of the failure of the testimony to show that William Keyser had any authority from his wife, Althea Keyser, who was the owner of the land, to make such agreement as to the division line. This instruction was properly refused for the reason that it ignores the testimony which tends to show a ratification by Mrs.

194 Sup—36

Keyser of such agreement. William Sickman testifies that after this agreed line was run Mrs. Keyser and French occupied the land in accordance with such agreement. The respondent testifies that the Keysers had fenced this land in accordance with the division line, prior to it being claimed by him. Upon this state of facts, even though Mrs. Keyser did not expressly authorize her husband to make the agreement to the division line between his land and that of Bird, yet after the agreement was made and the division line agreed upon, Mrs. Keyser and her husband acted upon it, took charge of the property in accordance with it, and her acts must be treated as a ratification of the agreement, as well as an approval of the results of it and was just as effective in making it a binding agreement upon a division line as though she had expressly given the authority to her husband to make such agreement prior to its being made.

We will treat together instructions 2 and 3 refused by the court. They treat of land claimed by Mr. Merriman by reason of being accretions attached to his land on the bank of the river, and they declare the law to be that if these accretions formed a strip of land between the lands owned by Stephen Bird and the Keysers, in that event Bird and Keyser were not adjoining proprietors and such agreement establishing a division line between them was invalid.

The fundamental error of those instructions is that they undertake in this proceeding between plaintiff and defendant to litigate the title and right of possession of J. E. Merriman to certain lands in possession of the defendant, when Merriman is not a party to the action.

It is made manifest from the testimony in this cause that at the time the division line was established, the Keysers and Bird were claiming all these accretions and sought to establish a division line as adjoining proprietors. In fact, Mr. Merriman testifies that re-

spondent now has possession of that strip of land claimed by him.

The judgment in this cause can in no way affect the claim or legal rights of Merriman to the strip of land claimed by him, for the reason that he is no party to this proceeding. This controversy is between the parties to this action, and the question is as to their rights to the property in dispute. If they were claiming these accretions as adjoining proprietors, and made and established a division line that both parties acted upon, as between them, that settled that question, and Mr. Merriman's rights to the land claimed by him can only be determined in an action where he is made a party, and the issues as to such rights are presented for determination. Merriman's claim to the strip of land designated in the instructions or its place of location, as between the parties to this action and upon the issues presented in the pleadings, had no place in this controversy and the court properly refused the instructions upon that subject.

As to the establishment of the division line between Bird and Keyser, the conclusions of the court have ample testimony upon which to rest their correctness, and under the well-settled and uniform rulings of this court the finding of the trial court upon the pure question of fact that is supported by at least substantial evidence, should not be disturbed by the appellate court.

Finding no reversible error in the record before us the judgment should be affirmed, and it is so ordered.

All concur.